### BLAIR et al. v. JEANNETTE-McKEE GLASS WORKS.

(Circuit Court, W. D. Pennsylvania. April 10, 1908.)

1. PATENTS—SUIT FOR INFRINGEMENT—VIOLATION OF INJUNCTION—PROCEEDINGS FOR CONTEMPT—NEW CHARACTER OF INFRINGEMENT.

Where a defendant has been enjoined generally from infringing a patent, it is incumbent on him, not only to cease the infringement then practiced, but to be careful to avoid other infringement; and where he immediately enters upon a different practice, which the court holds also infringes, he is guilty of a real contempt of court, and will be treated accordingly.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 613.]

2. SAME—INFRINGEMENT—MAKING GLASS ARTICLES.

The Owens patent, No. 628,027, for the art of making glass articles, construed, and held infringed.

3. SAME—DEFINITION OF TERM IN PATENT—"PLASTIC."

Where a term is defined in a patent, that is the construction to be given it, rather than the definition found in the dictionaries; and held, therefore, in a patent for the interior fire-finishing of the glass article which provides that it is to be subject to the fire blast when in a "plastic" condition, by this term according to the patent is meant before the imperfections imparted to the inner surface of the mold by the plunger have become permanent by the formation of a glaze.

In Equity. Suit for infringement of letters patent No. 628,027, for art of making glass articles, granted to Michael J. Owens July 4, 1899. On motion for attachment for contempt for violating preliminary injunctions.

Marshall A. Christy, for complainants.
Paul Bakewell and James K. Bakewell, for defendants.

ARCHBALD, District Judge[1] (orally). The validity of this invention is not open to question at this time. Not only has it been adjudicated, but adjudicated in a prior case between the same parties. Notwithstanding this, however, it would be more satisfactory if the exact construction to be given to it had been discussed and declared in a formal opinion after due hearing. But the defendants virtually dispensed with that by consenting to a decree against them. I might hesitate, without the aid of this, to express an opinion upon it, except for the fact that the patent does not seem to me difficult to con-

[1] Specially assigned.

strue, and I have also had the benefit of the arguments here to-day, as well as those at the time when I allowed the preliminary injunction.

The defendants claim to avoid infringement upon two grounds: (1) That the patent calls for the glass articles being subjected to fire-finishing while still held in a mold or form; and (2) that the glass must be in a plastic condition—neither of which, it is claimed, is fulfilled by the defendants in their present practice. There is nothing in the patent, in my judgment, except in the third claim, which requires the article to be supported in a mold at the time it is subjected to the fire-finishing blast; neither is there anything in the patent or the prior art which requires this to be read into the other claims. The first, second, and fourth not having any requirement of that kind, the fact that the defendants do not make use of it, but carry the article, after allowing it to cool for a few seconds in a form or mold, to a platform, where it is allowed to stand unsupported, except as jets of air are made to play upon it, does not, therefore, take them out from under the patent. I agree with counsel for the defendants that, if such a support were required, it would be what might be called a physical or mechanical support, and not simply the means employed by the defendants to prevent the glass article from collapsing because of its heated condition; that is to say, the jets of air that are made to play upon it cannot be said to support it, as it would be supported by a mold or form, so that, if a mold was required by the patent, the defendants, not making use of it, would not, therefore, infringe. But I cannot read the patent that way. It is true that in the specifications the use of a mold is spoken of, but there is nothing to confine the inventor to it; and the other claims, outside of the third, not calling for it, it seems to me that it is not an essential to the process.

The other position taken is that the glass, when subjected by the defendants to the blast, is not in a plastic condition. By a plastic condition, as it is contended, is meant that the glass is capable of being molded, and not merely that it is pliable, or able to be indented or bent; plasticity differing from mere pliability, and referring to a much more mobile condition. But the word "plastic" is not to be construed altogether by reference to dictionary definitions. The patent itself indicates what is meant by it. Not only is it expressly defined in the fourth claim, but all through the patent, and particularly in the second column of the first page of the specifications, at the sixty-second line, where, after speaking of the glass article as being in a plastic condition, the inventor goes on to say:

"In other words, before the imperfections imparted to the inner face of the mold by the plunger have become permanent by the formation of a glaze."

This, therefore, must be taken as the character of plasticity meant, when spoken of in the patent. The construction to be given to the term is thus simply that condition which enables the article to be successfully subjected to the blast by which the superficial imperfections are removed; the glass article not being so far set that this cannot be readily done. If this be the correct view to be taken, the fact that this is successfully effected in any given instance certainly would go

far to persuade that the glass was of that condition of plasticity which is contemplated by the patent.

There is another consideration, as it seems to me, which operates in favor of this construction, and that is the ease with which the patent is able to be evaded unless it be insisted on. The defendants contend that they allow the article a few more seconds to cool than the patent does, conceding that glass cools very rapidly under the circumstances; that is to say, there is only the difference of a few seconds between the actual practice of the patented process and the avoidance of it. It may be that, if there is an infirmity of this kind in the patent, we cannot save it. But a construction is not to be given to it that will absolutely invalidate it in this way, unless we are driven to it. It is easy to see to what the opposite conclusion would lead. The defendants, although apparently pursuing the exact steps of the process, if they allow the blank or article to remain a few seconds more before putting it under the blast, avoid infringement; while if they allow it a few seconds less they infringe. A patent left open to that construction would hardly be worth the paper on which it was printed. I do not mean to say that this is controlling, but incidentally it certainly has weight. But, aside from that, I put my decision squarely upon the exact terms of the patent; the inventor, as I have already stated, having clearly defined what he means, and the intention being simply that the glass article shall be still so plastic or mobile, or so open to the effect of the hot blast, that the imperfections shall be removed by means of it. The imperfections, in other words, must not be so set that they cannot be removed; and that is all, as I take it, that is required to realize the process. This is a method or process patent, as it is to be observed, and not an apparatus; and in the practice at present pursued, equally with that which was shown at the time the injunction issued, it seems to me that the defendants offend against and infringe upon it.

The only question in my mind is as to whether—this process not being exactly the same as that employed at the time when the preliminary injunction issued, which it is claimed that the defendants have violated—I should treat the acts of the defendants as done in disregard of the writ. I can see that under some circumstances like this the alleged offending operations might be so different as not only to require new injunction proceedings, with a new consideration of the infringement charged, but even a new bill. I am myself on record to that effect in the case of Walker Pivoted Bin Co. v. Miller (C. C.) 146 Fed. 249.

There is this, however, to be said, in the present instance, on that point. It does not appear that the new method adopted by the defendants was taken after submitting the matter to counsel in order to see whether it was justified. In other words, it was an entirely independent step on the part of the defendants, without any such sanction, upon which, as it seems to me, the defendants entered, not only inadvisedly, but altogether too readily. It was assumed on their own responsibility that the new method which they had devised was all right, and so they went on with it.

Mr. James K. Bakewell (interrupting): "May it please the court, that is a mistake. The defendants did consult me with regard to this, and I advised them that it did not infringe."

The Court: I did not so understand the matter, and had intended in the course of the argument to inquire with regard to it. Nor, without questioning your statement, does it altogether comport with the letter which I got from Mr. Smith immediately after the last hearing. But, putting that aside, and without being moved by it, I am inclined to hold that not only is the practice at present being pursued an infringement, as to which I am well satisfied, but that it violates the injunction under which the defendants rest. While it may be that no presumption is to be entertained against them, and that we are only to take the evidence which is here, and not something that might possibly be shown outside of it, at the same time, this being a clear infringement, it violates the injunction with which the defendants were served, which was not particularly that they should not do a particular thing, but that they should not infringe the patent. It enjoins them in terms from practicing the invention, and it was particularly incumbent upon them, after being warned by it, not only to avoid what they were doing at the time, but to see that their skirts were kept clear against otherwise infringing upon it. And the prompt manner with which, immediately after the last hearing, the present practice was entered upon, as well as some other things which have been alluded to, incline me to feel that there is a real contempt of court here, and a too ready inclination on the part of the defendants to assume that they are outside of the patent, while merely pursuing the same practice in a modified form, to have me pass it by. The complainants, under the circumstances, seem to me to be entitled to something that will be impressive, and prevent anything further being done in disregard of the rights which they possess in this patent. A substantial fine should therefore be imposed, with the costs of these proceedings. I do not want to make it oppressive, but I do want to have it sufficient, so that the construction which the court has put upon the patent and the rights of the complainants under it shall be respected.

The defendants are therefore directed to pay a fine of $500 and the costs.