**WESTINGHOUSE ELECTRIC & MFG. CO. v. METROPOLITAN ELECTRIC MFG. CO.**

(District Court, E. D. New York. October 6, 1921.)

Patents ⏤328—1,224,880, for electric switch and fuse box, held valid and infringed.

The Kries patent, No. 1,224,880, for an electric switch and fuse box for use where electric wires enter a building in which the switchboard and fuses are in separate compartments, the former of which may be locked and made inaccessible to consumers, *held* not anticipated, valid, and infringed.

In Equity. Suit by the Westinghouse Electric & Manufacturing Company against the Metropolitan Electric Manufacturing Company. Decree for complainant.

Kerr, Page, Cooper & Hayward, of New York City, for plaintiff.
C. P. Goepel, of New York City, for defendant.

GARVIN, District Judge.  This is an action in equity, brought to restrain defendant from infringing claims 5, 6, 7, 10 and 12 of the Kries patent No. 1,224,880, issued May 1, 1917, covering an electric switch and fuse box.  These claims read as follows:

"5. The combination with a casing having a door hinged thereto, of fuse terminals in one part of the casing accessible when the door is open and inaccessible when the door is closed, supply terminals and live switch contacts in another part of the casing, a barrier within the casing preventing access to said supply terminals and switch contacts when the door is open, pivotally mounted switch arms within the casing for connecting said switch contacts with the fuse terminals, and means operable from without the casing for rocking the switch arms and controlling the door, said means acting to lock the door when said arms are moved toward closed position and to release the door when said arms are moved from closed position.

"6. The combination, with a casing of fuse terminals in one part of said casing, supply wire terminals and a switch in another part of the casing. said switch adapted to connect the latter terminals with the fuse terminals, a door, hinged to the casing, for permitting access to the fuse terminals, said door having a projecting part adjacent its pivotal axis, a barrier within said casing for preventing access to said supply wire terminals and switch, and mechanism for actuating the switch and simultaneously controlling the door, said mechanism being operable from without the casing and comprising means acting to engage said projecting part on the door and lock the door when the switch is closed.

"7. The combination, with a casing, having an opening, and a door, hinged to the casing, for closing said opening, fuse terminals within said casing accessible through said opening when the door is open, supply wire terminals and live switch contacts in another part of the casing, inaccessible through said opening, movable switch members within the casing, for connecting said fuse terminals with said switch contacts, and actuating mechanism for the switch operable from without the casing, said mechanism and door having interlocking parts acting to automatically lock the door in closed position when said mechanism is moved to close the switch, the interlocking part on the door being located adjacent its pivotal axis."

"10. The combination with a casing having an opening and a door on the casing for closing said opening, of fuse terminals in one part of the casing accessible when the door is open and inaccessible when the door is closed, supply wire terminals and live switch contacts in another part of the casing, a barrier within the casing preventing access to said supply terminals and switch contacts through said opening, movable switch members within the casing adapted to connect said fuse terminals and switch contacts, mechanism for operating said switch members and for simultaneously controlling the door, said mechanism projecting outside the casing and comprising means for locking the door when the switch members are in closed position and releasing the door when the switch members have been moved to open position, and means for locking the said operating mechanism so as to hold said switch members in open position."

"12. The combination with a casing having an opening, and a door hinged to the casing for closing said opening, of fuse terminals in one part of the casing, accessible when the door is open and inaccessible when the door is closed, supply wire terminals and live switch contacts in another part of the casing, inaccessible through said opening, pivoted switch members within the casing adapted to connect said fuse terminals and switch contacts, mechanism for operating said switch members and simultaneously controlling the door, said mechanism projecting outside the casing and comprising means for locking the door when the switch members are in closed position and releasing the door when the switch members have been moved to open position, and means for locking the said operating mechanism so as to hold said switch members in open position."

Thus the purpose of the inventor was to inclose the apparatus making up such a switchboard as is placed where electric wires enter a building and before they enter the meter therein, in such a manner that the consumer might have access to the fuses, but not to the parts that carry the current, with such access possible only when the current is turned off.

Since electric lighting has been employed, all parts of the switchboard were exposed. Until the Kries patent this frequently involved danger to persons touching the exposed parts through which the current is carried, and under certain conditions made easy theft of the current by attaching wires to the switchboard between the point of entry of the wires into the building and the meter, and connecting such wires around the meter, so that the consumer is not charged with the current thus used.

To overcome these two objections to an exposed switchboard, the inventor inclosed it in a box, which could be locked, and the key held by the Electric Company. This box was made up of two compartments, with separate doors; one containing the switch, the other the fuses; the former being accessible to the company, the latter to the consumer. In order to make access by the consumer to the fuses unaccompanied by danger, and to prevent theft of current, Kries, the inventor of plaintiff's box, by an arrangement of bars and arms, made it impossible to open the fuse compartment of the box until the switch was "off," or, with the door of the fuse compartment open, to close the switch until that door was closed.

Plaintiff's device thus is merely a means of effecting an interlock between the door of the fuse compartment and the switch. To accomplish this, the door is hinged at its side nearest the pivot of the switch, and is provided with an appropriate projection near its hinge, while to the switch arm is attached a member which is movable, and which may engage and disengage with the door projection.

Defendant's claims of noninfringement will be considered. It was at first urged that defendant's box has a knob on the door of the fuse compartment and an additional catch or sliding latch on the door. These features are nothing more than convenient additions, and have nothing to do with the safety features of plaintiff's devise. Indeed, they were abandoned upon the argument.

Defendant contends that plaintiff's barrier between the two compartments of the box does not go all the way across the casing. This appears to be true, but it is of no consequence, for the opening is so slight that it is well-nigh impossible to get the hand through (thus practically eliminating danger) while the connection that could be made by slipping through a hook, with wire attached, to steal current, would be so imperfect that but little loss would be possible by that means. It is finally claimed that there is no infringement because in plaintiff's patent the door is closed by the closing of the switch, whereas, in defendant's the switch *may* be closed by the closing of the door. An inspection reveals, however, that the closing of the switch in defendant's device *will* close the door. The conclusion is reached that defendant's box differs from that of plaintiff's only in slight and non-

essential particulars, and that the claims of the patent in suit are infringed.

It now becomes necessary to consider whether the prior art covers the invention which is involved. The prior patents offered by defendant, so far as the record discloses, either are not in point, in that all of the parts are accessible (thus failing to avoid the danger from contact, which plaintiff's device eliminates) or have no satisfactory interlock.

Defendant relies chiefly upon the German patent to Oerlikon, No. 191,485, and the German patent to Schuckert, No. 107,437, claiming that these patents show a construction and arrangement similar to that of the patent in suit as disclosed at page 1, line 9, of the patent:

"My invention pertains to boxes or holders for electrical apparatus, and is designed to permit the opening thereof whenever necessary for inspection or renewal of the apparatus, but to preclude the passage of the current to the apparatus while the box or holder is open, and to prevent the possible taking of current at such time from within the chamber. Though susceptible of use in various other relations or with other apparatus, the invention is primarily intended for, and is illustrated in connection with, a switch and fuse box for the introduction of current from a service main into a room or building where the current is to be used."

At page 1, line 24:

"Briefly stated, the invention consists in a novel construction and arrangement of parts, prominent among which *is a closure for the fuse box or apparatus containing chamber, which closure is so connected with or related to a line switch inaccessibly mounted in a separate compartment that the switch must be opened before, and remain open during, the opening of the containing chamber.*"

At page 1, line 59:

"By my invention I avoid these several difficulties, give free and prompt access to the interior of the box or containing chamber, preclude all chance of accidental contact with live wires or conductors, and render impossible the taking of current from within the box or chamber while said box is open."

And at page 3, line 78:

"It is obvious that other forms of electrical apparatus, in addition to or in place of the fuses shown, might be inclosed in chamber 4, the essential idea of the invention being the combination of an apparatus containing chamber and a switch in such a manner that the opening of the apparatus containing chamber becomes possible only when the switch is open."

The Oerlikon patent, according to defendant's own witness, does not contain all the elements of claim 6 of the patent in suit, although it was apparently endeavoring to solve the problem to which the Kries patent was directed. It was unsuccessful, however, for in it the switch may be closed, either by accident or intentionally, with the door unfastened, or the switch may be readily closed, with the door open, by employing a screw driver or even a pencil.

The other German patent, No. 107,437, taken out by Schuckert, has one lid for both compartments, to which there seems to be no locking apparatus. There are certain essentials of plaintiff's device that are wholly lacking—to wit, fuse chamber, door to same, interlock between

door and switch and access through the slide opening to the lower compartment. The inventor of this patent did not have before him the problem solved by the inventor of plaintiff's patent.

Plaintiff may have a decree.