## WESTINGHOUSE ELECTRIC & MFG. CO. v. METROPOLITAN ELECTRIC MFG. CO.

(Circuit Court of Appeals, Second Circuit.   April 3, 1922.)

No. 227.

Patents ⬤⇒328—1,224,880, for electric switch and fuse box, valid, not anticipated, and infringed.

Claims 5, 6, 7, 10, and 12 of the Kries patent, No. 1,224,880 for an electric switch and fuse box, consisting of two compartments and so arranged that the fuse compartment cannot be opened while the switch is on, *held* valid, not anticipated, and infringed.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Westinghouse Electric & Manufacturing Company against the Metropolitan Electric Manufacturing Company. From an interlocutory decree, holding valid and infringed claims 5, 6, 7, 10, and 12 of the Kries patent, No. 1,224,880, dated May 1, 1917, for an electric switch and fuse box, and ordering a reference (278 Fed. 666), defendant appeals. Affirmed.

C. P. Goepel, of New York City, for appellant.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge.   In view of the clear description of the patent and the full recital of the claims in Judge Garvin's opinion, we need only refer to claim 5 as illustrative of the invention. That claim reads:

"5. The combination, with a casing having a door hinged thereto, of fuse terminals in one part of the casing accessible when the door is open and inaccessible when the door is closed, supply terminals and live switch contacts in another part of the casing, a barrier within the casing preventing access to said supply terminals and switch contacts when the door is open, pivotally mounted switch arms within the casing for connecting said switch contacts with the fuse terminals, and means operable from without the casing for rocking the switch arms and controlling the door, said means acting to lock the door when said arms are moved toward closed position and to release the door when said arms are moved from closed position."

What the art needed was a device to prevent easy access to switchboards inclosed in boxes or holders installed extensively in manufacturing establishments and particularly in homes. Such access was dangerous to thoughtless or inexperienced persons, who might be seriously injured, and perhaps killed, by contact with exposed parts, and also made thefts of current not difficult of accomplishment. Prior to Kries, these switchboards were inclosed in a box and locked, so as to prevent access, except by the representatives of the lighting company. The fuses, however, may burn out at any time, and under the old system nothing could be done until the company's inspector appeared with his key to open the box.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

To overcome this difficulty presented a very practical problem. Kries attained the desired result in a manner which now seems simple, but the very simplicity of which is one of the merits of the invention. He took the inclosing box, with its two compartments, each having a door, one containing the fuses, the other the switch members, extended an operating handle for the switch outside the box, and so arranged his elements that it was impossible to open the fuse compartment board until the switch was "off," or, when that door was opened, to close the switch until the compartment door had been closed. Another result was that, when it is desired to have the switch remain for an extended time in its open position (as when a householder is away), the switch arm may be locked in that position, so as to make sure that the current is off the meter.

The application encountered the not unusual struggle between the reluctant examiner and the overstating solicitor; but, notwithstanding its history, we deem the effective interlocking between fuse door and switching member in two compartment switch boxes as the outstanding contribution to the art.

Only two prior art patents need be referred to: German patent, No. 191,485, to Oerliken, and Austrian patent, No. 36,265, to Meyer. As Hammer, plaintiff's expert said, the Oerliken patent shows—

"a casing designed to contain both switch and fuses, and it does segregate the switch members in one compartment, and it does place the fuses in another and separate compartment, and there is a barrier between the two compartments, and there is an interlock between switch-actuating member and fuse compartment door."

But the switch may be closed with the door unlatched, whether by design or accident, or the switch may be closed with the door wide open, by the use of a screwdriver, or even a pencil.

The Austrian patent discloses a single compartment device, without any barrier, containing both fuses and switches. The operating mechanism is such that it may be easily disengaged, so that the switch may be closed and the partial door left open, and there is nothing inaccessible about any part of the interior of the box.

The failure of the prior art, the effectiveness with which the device works in practice, the ease with which a layman can understand its operation, and the almost complete protection against accident and theft of current combine to make invention clear and to attribute to the disclosure a position of substantial merit. Infringement of the claims of such a patent may not be readily avoided by substituting a less efficient device, while adopting the features which give the invention vitality.

Defendant's device, so far as concerns the interlocking mechanism, is a faithful copy of Figure 6 of the patent drawings, except for some minor mechanical details of no consequence. The District Judge put the matter aptly when he said:

"Defendant contends that plaintiff's barrier between the two compartments of the box does not go all the way across the casing. This appears to be true, but it is of no consequence, for the opening is so slight that it is well-nigh impossible to get the hand through (thus practically eliminating danger), while the connection that could be made by slipping through a hook, with wire at-

tached, to steal current, would be so imperfect that but little loss would be possible by that means. It is finally claimed that there is no infringement, because in plaintiff's patent the door is closed by the closing of the switch, whereas in defendant's the switch may be closed by the closing of the door. An inspection reveals, however, that the closing of the switch in defendant's device will close the door. The conclusion is reached that defendant's box differs from that of plaintiff's only in slight and nonessential particulars, and that the claims of the patent in suit are infringed."

Finally, it is urged that "barrier" and "inaccessible" used, for instance, in claim 5, supra, are indefinite terms, and that, unless the claims are limited to an impenetrable barrier or complete inaccessibility, they must be held void for indefiniteness. This contention is followed by the argument that, because some one might be able deliberately to injure himself in handling defendant's box, or might more readily steal current than would be possible in a device responding to the claims of the patent, therefore that the claims are not infringed. The patentee rather extravagantly had said in his specification:

"I * * * preclude all chance of accidental contact with live wires or conductors, and render impossible the taking of current from within the box or chamber while said box is open."

But all such descriptions are relative within appropriate limits. Nothing mechanical is a perfect barrier nor a perfect defense against accessibility, although in this case the invention reasonably approximates perfection in this regard. No one really desiring to avoid infringement need be deceived in this respect. We have indicated so plainly that there are words not susceptible of mathematical definition, which nevertheless fairly describe what is meant to be conveyed to the skilled worker in the art, that there should be no further doubt on the point. Eibel Process Co. v. Remington-Martin Co., 234 Fed. 624, 148 C. C. A. 390; Vacuum Cleaner Co. v. Innovation Co., 239 Fed. 543, 152 C. C. A. 421; E. J. Manville Co. v. Excelsior Needle Co., 167 Fed. 540, 93 C. C. A. 216; Blair v. Jeannette McKee Glass Works (C. C.) 161 Fed. 355.

Decree affirmed, with costs.