## WESTINGHOUSE ELECTRIC & MFG. CO. v. WADSWORTH ELECTRIC MFG. CO.

Circuit Court of Appeals, Sixth Circuit. December 14, 1929.

No. 5231.

D. W. Cooper, of New York City (Victor S. Beam, of New York City, Walter M. Shohl, of Cincinnati, Ohio, and Thomas J. Byrne, of New York City, on the brief), for appellant.

W. F. Murray, of Cincinnati, Ohio (Marston Allen, of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge. ▮▮▮ Suit by appellant upon claims 1, 2, and 10 of Kries patent, No. 1,224,880, dated May 1, 1917, for a fuse and switch box. Counterclaim by appellee upon claims 2 and 3 of Wadsworth reissued patent, No. 15,718, dated November 6, 1923 (original 1,403,659, January 17, 1922), for a similar article. The District Court held that claims 1 and 2 of the Kries patent were not infringed and claim 10 was invalid, that claim 3 of the Wadsworth reissue was valid and infringed; and dismissed the original bill and sustained the counterclaim by the usual decree for injunction and accounting.

The devices in question are characterized by a single box, which may be sealed against opening, and which is divided into two compartments, with no effective access from one to the other. In one of these is the main line switch; in the other are the fuses which guard the line of local use. The fuse compartment has a door or shutter permitting the fuses to be replaced from outside. The switch has an operating member projecting outside the main box. The general purposes are to prevent accidental contact with a live wire while the fuses are being handled and to prevent unauthorized tapping of the line at the switch, or perhaps at the fuses, to carry the current around the meter, which ordinarily is just beyond the fuses. The general plan is to provide mechanism to insure that the switch must be open before the fuse box door can be opened and that the latter door must be shut before the switch can be closed. Kries provides a lever arm revolving on a pivot held in the box frame. At one end is the switch blade which opens or closes the switch. The other end carries the means for controlling the door. Three forms are shown in the drawings—in all the switch is below, the fuses above. In one the lever arm is positively attached at one end to the door so that the latter is forced open or forced closed as that end of the lever moves, while the other end is opening or closing the switch. In the two other forms the door operating end carries a cam which, when the switch has been opened, permits the door, hinged at its bottom, to fall open or to be manually opened; but, upon the switch-closing motion of the arm, this cam engages a corresponding lug upon the door and drives it to its closed position before the switch blade contact is made. In two forms the lever arm is pivoted, at its door-operating end, to a rod or bar sliding out through the front or top of the box, and is operated by a push or pull upon this latter arm; in the third form, the upwardly operating arm is connected by a link to the door, and is moved by the door. In all three the switch lever arm is rotated through an arc, turning upon its frame pivot. The Wadsworth device, said to infringe, responds to the above description save in two particulars: (1) The lever arm is rotated upon its pivotal point by projecting the pivot, as a shaft, through the case wall and attaching an external crank. (2) The door slides vertically in the box casing and must be raised manually after it has been unlocked by opening the switch and must be returned manually or by gravity to its closed position before the switch closing arm can operate.

Claim 1 of the Kries patent is given in the margin;[1] Claims 2 and 10 differ therefrom only as will be stated. The District Court thought that the words "means, operatively related to the door and switch," found in claim 1, should be so construed as to exclude any device in which the "means" did not positively operate to close the door in advance of the switch closing, and thus would not reach the Wadsworth device. Considering first the specification, drawings, and claims: Upon their face, we are not satisfied that this phrase should be so narrowly construed. We think the natural inference is that this "means" is not intended to be described more narrowly than is indicated by the remainder of the clause describing the function of the parts "necessitating the closure of the door prior to the closure of the switch and the opening of the switch prior to the opening of the door"; and the Wadsworth device responds completely to this functional characterization. No reason is suggested why this positive operating relation should be more necessary upon the clos-

[1] The combination with a casing having an opening, and a door on the casing for closing said opening, of fuse terminals in one part of the casing, accessible through said opening when the door is open, supply-wire terminals and live switch contacts in another part of the casing, a barrier within the casing preventing access through said opening to said live terminals and switch contacts, a movable switch-member within the casing for connecting said switch contacts with said fuse terminals, and means operatively related to the door and switch member necessitating the closure of the door prior to the closure of the switch and the opening of the switch prior to the opening of the door.

ing than upon the opening of the door; and yet seven of the eight figures of the drawing show forms in which the switch opening merely unlocks the door, and the specification says (lines 65–67, p. 3) that it is preferable to have the door closable while the switch remains open. Figure 8 shows a form in which the positive driving relation was complete in both directions; but no basis is seen for inferring that claims 1 and 2 were intended to be specific to Figure 8; on the contrary, Figure 8 seems to be a variant form which could not have been specifically claimed in this application. We must interpret claims 1 and 2, and claim 10, as being relatively generic in this respect. If there were doubt about claim 1, claim 2 could not be escaped. It discards any specific limitation to be found in the phrase "operatively related to," and only provides that the operation of the switch simultaneously controls the door. Then it defines its meaning by saying that this is to be by mechanism which first prevents the door from being opened and then permits it to be opened. When we are speaking of opening and closing a door, it seems clear that this operation is "controlled" by the lock, and that when we operate the lock we "control" the door.

Coming to claim 10: We think its language as to the relative locking and unlocking or controlling operation is clearly broad enough to cover Wadsworth; but there has been added to the combination an element, outside the box, which will lock the switch lever handle in an open position so that the switch cannot be closed until the locking seal is broken. We are inclined to agree with the trial judge that the addition of this common position lock does not create patentability in the claim, even though the lock may be new in that combination, but neither does it hurt the claim; if there is patentability in the basic combination before this element is added, the claim is a permissible variant and is good. Sandy MacGregor Co. v. Vaco Co. (C. C. A. 6) 2 F.(2d) 655. Wadsworth plainly infringes this claim.

It remains to consider the state of the art before Kries, as affecting patentability or as compelling, as the District Court thought it did, close limitation. The patent was upheld as against the defenses of anticipation or noninvention by the District Court for the Eastern District of New York and by the Court of Appeals of that circuit. Westinghouse Electric & Mfg. Co. v. Metropolitan Electric Mfg. Co., 278 F. 666; Id., 281 F. 528. The record in that case, presented to us, shows that the specific question of claim interpretation and infringement above described was not there involved; but the question of patentability is not a very different question from that of scope in this respect. Looking back now to the date of the application (1910), it seems a very simple thing to provide an efficient mutual interlock, after some one had observed the desirability of an inaccessible switch compartment and an accessible fuse compartment in a unitary box with a partition between the two, and with the current necessarily cut off from the fuse compartment when it was open. The nearest approach in the earlier art to both observing and solving this problem was the German patent to Oerlikon, No. 191,485, in 1907. This was practically inoperative in at least one respect. There was no difficulty in closing the switch while the fuse box was open, and there was substantial danger that this might be done accidentally. The device therefore failed of its prime object, safety. Neither the open door, nor any attachment thereto, prevents the switch from being closed; that is done by an independent, spring-controlled snap lock. Further what is shown by the drawing is not entirely plain. The Kries claim will not read upon it, unless by a construction broader than is necessary to reach Wadsworth. Such a disclosure in a foreign patent is not a sufficient base for supposing modifications and changes which a skilled mechanic could make and for thereby demonstrating lack of invention by a later United States patentee, who solved the requirements of principle and of practical operation. This patent was examined and rejected by the courts in the Second circuit.

United States patent to Hundsandsen, No. 654,310, issued in 1900, is also relied upon. This was in the record of the New York case, but did not impress the courts there. It was for a junction or connection box. The drawings do not seem to suggest the device in question; if the idea is there, it is to be found only by an X-ray observation. There is no unitary switch and fuse box, with a separating partition between them. The fuse box has an external lock, operated by a switch handle located in a separate structure. We think it insufficient to destroy the later patentability of the Kries combination. The other earlier art cited comes no closer than these two.

In such a situation, and considering a step which was a practical advance, but which was near the margin line dividing skill from invention, we are persuaded, not merely by the propriety of upholding the patent against a defense which is less than convinc-

ing, but also in large measure by the propriety of following the conclusion of the New York court. There is nothing substantial in the present record beyond what was present in the New York record; and, while we must not hesitate to reach a different conclusion if we are satisfied to the contrary, yet such a prior decision in such a case as this often may well turn the scale. We cannot say we are satisfied that the decision of the New York court was wrong; and, while the state of the art gives plausible basis for denying patentability to Kries, we do not see that it gives any basis for allowing patentability to Kries, and yet limiting him to one of the variant forms covered by his claims.

During the progress of the Wadsworth original patent through the office, he was put into interference with Kries as to Kries' claim 1 and other claims. The judgment was against Wadsworth, and he eventually had a patent only for what was left. It further appears that the Wadsworth Company thereupon took a license under this Kries (and other) patents, manufactured for a time, and then repudiated the license. Departures by Wadsworth in his present manufacture from the form shown in his patent perhaps make this interference issue and this license nonpersuasive; but they deserve mention.

The Wadsworth application was from time to time rejected upon Kries, Murray, and Cole. It eventually issued with two claims. No. 2 is in the margin.[2]

As characterized by this claim, Wadsworth differs from Kries (Figure 6) only in this: Kries had an arm turning upon a pivot

in the box side wall; the upper end controlled the door, the lower end the switch. His operation was by a pull upon the end of this lower arm. Wadsworth attached the pivot rigidly to the lever arm, projected it through the side of the casing, and rotated it with a crank. In this we cannot see anything more than the commonest mechanical expedient. The substantial meritorious idea —a unitary two-compartment safety box with a mutual interlock—was old in Kries and reduced to commercial practice by him; and Wadsworth cannot use it again to give patentability. Whether a lever should be operated by a pull or push upon one end or the other while rotating on its fulcrum, or whether it should be rotated by a crank at the fulcrum, is broadly immaterial. Making the door sliding instead of hinged, and calling it a shutter, were to substitute a common equivalent. Indeed, Wadsworth did not attempt to distinguish Cole, cited against him (in addition to the presence of a crank) save by relying on lack of direct connection between the switch and shutter. In this, he did not distinguish from Kries, nor indeed effectively from Cole. His present claim that by using a crank he gets more leverage and so more power to open and close the switch might distinguish from Murray, but not from Kries or Cole. Whether the lower switch arm extension in each of the latter or the Wadsworth crank handle gives the greater leverage is very uncertain from the patents and fortuitous in fact. We think this Wadsworth patent, as originally issued, cannot be sustained. It is therefore unnecessary to consider the force of the reissue, intended to be broadening.

The decree below must be reversed, and the case remanded for further proceedings in accordance with this opinion. Unless some other measure is established, the master, on the usual accounting, should ascertain and report a reasonable royalty, in order that this basis may be applied if the court thinks proper.

[2] 2. In a switch box, mutually inaccessible switch and fuse compartments, a switch and a fuse in its respective compartment, a rotatable operating member for the switch, said box having an opening for access to the fuse compartment, a shutter moving in the plane of the box about said hole, located on the inside of the box and adapted to block and unblock said hole, said shutter being free of direct connection to the switch, and means on the operating member and the shutter to enforce a closed position of the shutter in all closed positions of the switch.