NATIONAL REJECTORS, Inc. v.
A. B. T. MFG. CORP.
(two cases).
Nos. 10290 and 10291.

United States Court of Appeals,
Seventh Circuit.

May 8, 1951.

As amended May 15, 1951.

Clarence E. Threedy, Chicago, Ill., for A. B. T. Mfg. Corp.

Clarence J. Loftus, William E. Lucas, Chicago, Ill., for National Rejectors.

Before FINNEGAN, LINDLEY, and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

In National Slug Rejectors, Inc., v. A. B. T. Manufacturing Corporation, 164 F.2d 333, this court, having adjudged Claim 21 of Patent 2,292,628 to Fry, valid and infringed by defendant, remanded the cause to the District Court with directions to enter judgment for injunction and accounting. Pursuant to the mandate, the master-in-chancery, after hearing the evidence in the accounting proceeding, made findings and conclusions, which the court later approved against defendant in the sum of $114,455.91 and confirmed, resulting in a judgment for damages arising from infringement by Models 6005, 6010, 6025, 6005A, 6010A, 60-25A, 7005, 7010, 7025 and 6500. The court found, however, that Models 7000A Series, 7000B Series and 6500B did not infringe. In the course of the proceeding, defendant was charged with and found guilty of contempt because of its violation of the terms of the injunction. From the judgments against it, defendant has appealed, and from the judgment that defendant has not infringed by making and selling the last three mentioned models, plaintiff appeals. Defendant contends that the court erred in finding certain models of slug rejectors manufactured by defendant within valid Claim 21 of the patent, excluding certain evidence, entering judgment against it under Section 4921 of the Patent Law, 35 U.S.C.A. § 70, as amended August 1, 1946, awarding judgment under the doctrine of lost sales, allowing an unreasonable royalty and finding defendant guilty of contempt. Plaintiff urges that the court should have included in the judgment damages because of sale of defendant's accused Models 7000A Series, 7000B Series and 6500B, but did not err in any other respect.

In view of our decision in the prior appeal adjudging Claim 21 valid and infringed, we need not reiterate what was said there leading to the judgment which ever since has been and still is binding upon the parties.

The master found, and the court agreed, that, as to certain models, defendant was liable to account. Defendant now contends that this was erroneous, the basis for its argument in this respect arising out of its premise that the models for which an accounting was ordered do not include the feature of a cradle "swingably secured to a movable retainer". We have examined the exhibits and the evidence relating to the same and agree with the District Court that each of these accused models is the mechanical equivalent of the Model Series 6000, which has heretofore been adjudged to infringe, and is, therefore, likewise an infringement of Claim 21. Defendant's contention that they are not equivalents, as we have said, depends upon its premise that its condemned rejectors do not "include a movable retainer". Its theory is that the condemned devices do not contain "said member swingably secured to a movable retainer, said retainer yieldably positioned to the same frame adjacent to said receiving pathway and adapted to be laterally displaced from said frame to withdraw said projections from said receiving pathway". However, the District Court found that the rejectors of these three series do contain the feature mentioned. Thus we find in defendant's Model 6500 and 7000 a cradle which is connected with a retainer

so movable as to swing back and forth when the device is in operation for rejection purposes. This element is positioned upon the frame adjacent to a receiving pathway, not fixedly but yieldably, and is adapted to be moved laterally from that part of the frame which retains the coin and keep it moving laterally with the projections, in order to withdraw said projections from the receiving pathway. True the parts are not placed in exactly the same position as in the model previously before the court, but we can not escape the fact that they are present and serve the same purpose and achieve the same result as do the parts in the original model. In each of them the movable retainer, when operated, withdraws the arms or projections of the cradle from the receiving pathway and the operating part of the retainer is displaced from the cooperating part of the frame, all as contemplated by the patentee in Claim 21. We have verified this from examination of the physical exhibits. A so-called cradle in all series, including the one which we previously held infringed, is slidably mounted on a fixed pin. It can rotate on that pin and may also be slid or moved outwardly. In each model there is a movable retainer operatively connected with the cradle, when in operation for rejecting defective slugs. The method and means of operation are to all intents and purposes the equivalent of those in Series 6000, previously adjudged an infringement:

 It seems appropriate at this stage to consider plaintiff's contention that the court erred in failing to find that defendant's Model Series 7000A, 7000B and 6500B do infringe. In this respect, defendant claims that these devices contain no element "which either structurally or functionally responds to the finger type in the specifications of the patent in suit". It insists that its stripper bar does not "hold the trapped coin on the cradle projections as does the finger" of the patent "when the cradle projectors are withdrawn from the coin receiving pathway" and that in the models now being considered "the cradle projectors are never withdrawn from such pathway". It is perfectly obvious, upon examination of the exhibits, that defendant has, in its last mentioned models, varied the arrangement appearing in its infringing Model 6000. In the later models defendant has so arranged the parts as to move laterally, during the operation of rejection of the under-weighted coin, the arm or finger of Claim 21, instead of the cradle projections themselves, in order to remove the intercepted coin and cause it to drop down the rejection passage, the pathway for the rejected slugs. In other words, the stripping finger is moved instead of the cradle, which remains fixed. Thus, in one device, the cradle moves; in the other, the finger. In both, however, they must act in co-operation. There is no difference in results. The operation necessarily requires that one element remain fixed and the other move. We cannot see that it involved any conception of a different mechanical principle or method of operation to make the moving part the finger instead of the cradle. In other words, the movement of each toward or away from the other must be relative as to each other, such as makes it possible that both move transversely to each other or that either one be fixed and the other movable. This, we think, is a mere transposition of motion of cooperating parts of the devices of the patent, equal to and corresponding with what the patent prescribed, within the purview of the courts' decisions in Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 40–43, 50 S.Ct. 9, 74 L.Ed. 147; Blake v. Robertson, 93 U.S. 728, 24 L.Ed. 245; Tratsch v. Chicago Lock Co., 7 Cir., 72 F.2d 482, 485. This court said, in the last mentioned case: "The only question presented, therefore, is whether appellant avoids infringement by placing the abutment member P and S[1] on the slide instead of on the guide, and by forming the elongated slot D in the guide instead of the slide, and we are convinced that the question must be answered in the negative. In appellant's devices there is a mere reversal or transposition of parts used in the patent, but they produce the same functions in substantially the same way, and accomplish the same result as the

patent." The language quoted is directly applicable to the devices held not to infringe.

In this respect, there was no dispute as to the facts in the trial court but merely a question of whether the undisputed features of the structure are beyond the limitations of Claim 21. Decision of this issue entails an interpretation of the claim and a comparison of the admitted structures with its teachings. We think the court erroneously concluded that these rejectors did not infringe and that defendant should account for the damage arising from such infringement as well as for that arising from the models found to infringe.

There remain for consideration, the alleged errors upon the part of the court in entering the judgment for damages. The governing statute, R.S. § 4921, 35 U.S.C.A. § 70, as amended August 1, 1946, provides that plaintiff "shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor, together with such costs, and interests, as may be fixed by the court". In pursuance of this statute, the master found that of defendant's total sales of 303,598 infringing devices plaintiff would have sold 233,590 if defendant had not infringed. Upon evidence justifying his conclusion, the master allowed $93,891.11. On the remaining 70,008 units sold by defendant, the master allowed a royalty of 12½% of plaintiff's selling price. His report discloses a careful attempt to reconcile conflicting testimony. However, he concluded that the utility of all infringeing rejectors and their acceptance by the public is "almost" entirely due to the features within the protection of the patent and refused to apportion the profits amongst other factors contained in them.

■ Defendant insists that the amendment of August 1, 1946 does not apply for the reason that it provides that it applies to "causes of action in which the taking of the testimony has not been concluded" on that date. 35 U.S.C.A. § 70 note. However, we think defendant's argument unsound. Here the evidence upon the original complaint had been concluded before August 1, 1946, but, at that time, all the evidence upon accounting was yet to be taken. Consequently the case seems clearly within the amendment, for an accounting is not a new or special proceeding but a part of the original cause and within the original relief prayed. Smith v. Vulcan Iron Works, 165 U.S. 518, 525, 17 S.Ct. 407, 41 L.Ed. 810; Dixie-Vortex Co. v. Paper Container Mfg. Co., D.C., 43 F.Supp., Id., 7 Cir., 130 F.2d 569; Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 169 F.2d 645, Id., 7 Cir., 174 F.2d 834. In the latter case we held, inferentially at least, that the amendment applies in a case such as the present one.

■ We think that the master's finding as to damages is amply supported by the record. The plaintiff offered evidence tending to prove that it was equipped and had the capacity to fill the orders for the infringing sales; that purchasers of defendant's infringing devices would have made these purchases from plaintiff but for defendant's infringement; that the resulting profit would have been realized by plaintiff, and that the infringing use of the patent was of such import in the sales as to make the entire profit that of plaintiff. The master found that a market would remain for these rejectors if features licensed under other patents were omitted but that no market would exist for them if features under Claim 21 were eliminated and that this is one of the rare cases wherein substantially the entire marketable value of a mechanism comprising several features can be attributed to one patented feature which embraces an improvement of one of the parts of the mechanism. The evidence amply justifies this conclusion and, indeed, we can not say that the master would have been justified in coming to any other conclusion than that but for the features found to have infringed there would have been absolutely no sale for the rejectors manufactured by defendant. Under such circumstances, the entire profits belong to plaintiff. Clark v. Johnson, 7 Cir., 199 F. 116, 121; Orr & Lockett Hardware Co. v. Murray, 7 Cir., 163 F. 54; Crosby Steam Gage Valve Co. v. Consolidated Safety

Valve Co., 141 U.S. 441, 453, 12 S.Ct. 49, 35 L.Ed. 809; Armstrong v. Belding Bros. & Co., 2 Cir., 297 F. 728, 731–732. "An infringer is liable for the entire profits made by the manufacture and sale of an article containing the patented device, where it appears that, but for the patented feature, the article would not have been salable." Armstrong v. Belding Bros. & Co., supra.

■■ The royalty of $20,564.80, is clearly substantiated by the evidence. The testimony would have justified a finding of a reasonable royalty of 25% but the master conservatively fixed it at 12½%. The amount was within the province of the court to determine. Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U.S. 641, 648–651, 35 S.Ct. 221, 59 L.Ed. 398.

■ Defendant complains because the master did not allow, in his computation of defendant's profits, anything for the expense of a royalty paid to Patzer, its president under other patents. Patzer licensed defendant under some 24 patents, but only two of these cover structures employed in the infringing device. The 10¢ was paid him for a license for all the patents and how much of it was allocable to defendant's infringing rejectors was not shown, though the burden of proof was upon defendant to prove all of its expenses. Computing Scale Co. v. Toledo Computing Scale Co., 7 Cir., 279 F. 648, 673, 677. The master was fully justified in excluding any consideration of the unproved expense.

■ The District Court found that, after the injunction was served on March 5, 1948, defendant, in the three following months, received orders from 50 of its customers, throughout the country, for 24,271 coin rejectors which included Models 6005, 6010 or 6025 found to infringe; that defendant accepted these orders and shipped the devices upon invoices bearing the numbers aforesaid, but that the rejectors actually shipped were the Models 6000A Series, which differed from Model Series 6000 in their infringing character in only slight unimportant details, evading in no way the infringing operation. The court found further that it was defendant's duty to inform its customers that the sales had been enjoined; that defendant failed to do so and that it deliberately so acted as to conceal the fact from its customers. Clearly the evidence was such as to justify the finding of contempt as to these transactions.

■ The court found further that defendant had been guilty of contempt in selling 7000 Series and 6500 after May 28, 1948, after the master had found and held that they infringed. Defendant, indeed, admitted that it continued to sell these models, after the finding of infringement had been made, to the extent of at least 920 in number. This, too, was abundant evidence of contempt of court. The evidence discloses no basis upon which we, in passing upon the findings, would be justified in concluding that they were clearly erroneous. The language of Blair v. Jeannette-McKee Glass Works, 3 Cir., 161 F. 355, is pertinent; there the court said: "Where a defendant has been enjoined generally from infringing a patent, it is incumbent on him, not only to cease the infringement then practiced, but to be careful to avoid other infringement; and where he immediately enters upon a different practice, which the court holds also infringes, he is guilty of a real contempt of court, and will be treated accordingly."

In appeal 10290 the judgment of the court is affirmed; in 10291 the judgment, in so far as it determines that sales of Models Series 7000A, 7000B and 6500B did not infringe Claim 21, is reversed and remanded, with directions to enter judgment that those models infringe Claim 21 of the patent involved and that plaintiff is entitled to an injunction and accounting in due course.