William BALTZ, an Individual, and Wonder Products Company, a corporation, Plaintiffs-Appellants,

v.

THE FAIR, an Illinois corporation, et al., Defendants-Appellees.

No. 12904.

United States Court of Appeals Seventh Circuit.

June 23, 1960.

---

Anthony Chiara, Chicago, Ill., Benjamin H. Sherman, Chicago, Ill., for appellants.

Thomas J. Byrne, Jr., New York City, Russell H. Clark, David L. Dickson, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiffs-appellants, William Baltz, an individual, and Wonder Products Company, a Tennessee corporation, filed a petition in the United States District Court for the Northern District of Illinois for an order adjudicating defendant-appellee, The Fair, an Illinois corporation, and others in act of concert or in privity with The Fair to be in civil contempt of such court for alleged violation of a judgment and injunction entered on July 15, 1957 by Judge Win G. Knoch, then a District Judge. Named as respondents with The Fair were Montgomery Ward & Co., Incorporated, the owner of a majority of The Fair's capital stock, DeLuxe Game Corporation and The Gong Bell Manufacturing Company.

The judgment and injunction were entered in Civil Action No. 52–C–2134. This cause was brought by Baltz, the owner of U. S. Patent Re. 23,849, and Wonder Products, his exclusive licensee, against The Fair for its use and sale of spring-suspended hobby horses manufactured by Rich Industries, Inc., alleged to infringe the Baltz patent. Rich voluntarily joined as a defendant and assumed the complete defense of the action on behalf of itself and The Fair. Following a trial and related proceedings, the issues were found for plaintiffs; and favorable findings of fact and conclusions of law were entered. There was a judgment holding the Baltz patent valid and infringed and enjoining defendants from any further infringement. This judgment became final following the dismissal of an appeal therefrom by defendants. Subsequently, Rich took a license from plaintiffs and is not concerned with the instant contempt proceedings.

The writ of injunction was duly issued and served upon Julius P. Hansen, president, and Ralph B. Bingham, toybuyer of The Fair, on August 28, 1958 and reads as follows:

"\* \* \* Now, This Is To Command that you, your agents, employees, associates, servants and those in active concert and participation with you and each of you do absolutely desist and refrain from directly or indirectly making, using, selling or offering to sell, except under license from the plaintiffs, any spring-suspended hobby horses embodying the inventions disclosed and claimed in either claim 1 or 2 of said Letters Patent Re. 23,849 or in any other way infringing thereon \* \* \*."

In 1956, during the pendency of the Rich suit, the parties in that action entered into and executed a written stipulation to the effect that the issue of alleged infringement be limited to "spring suspended horses manufactured by defendant, Rich Industries, Inc., *without prejudice on the part of defendant, The Fair, to hereafter defend as to any other spring suspended horse sold by The Fair and made by any other manufacturer* and without prejudice on the part of plaintiffs to hereafter claim infringement as to any other spring suspended horse made by any other manufacturer, *in any other suit.*" (Emphasis added.) Although this stipulation was not filed as a matter of record in that action, it was fully relied upon and the infringement issue was so limited at the trial.

On August 2, 1957, after the instant injunction was ordered, but about a year before it was issued and served, DeLuxe Game Corporation instituted a declaratory judgment action against Wonder Products Company (both are parties to the present contempt action) in the United States District Court for the Southern District of New York. This proceeding sought to declare the Baltz patent invalid in law and not infringed by the spring-suspended horses manufactured and sold by DeLuxe Game Corporation. Following the denial of motions to dismiss the action or in the alternative to transfer, the issues were closed; the case is now awaiting trial in the New York court. Although all of the parties in the case at bar are not made in the New York suit, the issue of infringement is identical to the one now before us.

Following the entry of the judgment and injunction in the Rich case by Judge Knoch and their issuance and service on The Fair in August, 1958, The Fair stopped selling all spring-suspended hobby horses and notified Montgomery Ward of the injunction. The Fair then advised DeLuxe Game Corporation, the manufacturer of the hobby horses then being sold, of the injunctive writ. After negotiations DeLuxe Game Corporation executed and furnished The Fair with a special indemnity agreement covering its merchandise, and The Fair then resumed the sale of the DeLuxe products now alleged to infringe.

On February 18, 1959, plaintiffs instituted the present contempt proceeding. The petition alleges, *inter alia*, that The Fair violated the injunction in the Rich suit by selling hobby horses manufac-

tured by DeLuxe Game Corporation, which devices are alleged to be substantially identical and the full equivalent of those manufactured by Rich Industries which were found to infringe the patent. The same charge was made as to merchandise manufactured by The Gong Bell Manufacturing Company. However, Gong Bell gave plaintiffs a separate agreement to discontinue infringing activities and is no longer a party to this appeal. Montgomery Ward is named as a respondent since, following the entry of the original judgment and injunction, it acquired a majority of the capital stock of The Fair and The Fair is now its subsidiary. The Fair alone has filed an answer to plaintiffs' petition and therein denies the charges of contempt.

The Fair filed a motion for summary judgment and for an order dismissing the petition for the reason that the injunction of July 15, 1957 was limited in its scope to devices manufactured by Rich Industries and is binding only on the parties to that action and because of the pending New York case. After certain depositions were taken and affidavits were filed and plaintiffs answered the motion for summary judgment, the district court (Judge LaBuy) entered an order dismissing the petition, from which this appeal is taken, and filed a memorandum opinion. Prior to this order the trial court suspended discovery sought by plaintiffs and proof of the alleged infringement pending the ruling on the motion for summary judgment.

The district court stated that "[t]he basic issue to be resolved is whether the respondents named in plaintiffs' petition are within the scope of the decree and injunction entered on July 15, 1957." It held, in substance, that the judgment on which the injunction was founded was to be limited to infringing devices manufactured by Rich Industries and limited further to the parties to that action. The court further held, in effect, that since the DeLuxe merchandise was not before the court in the principal action and since the DeLuxe indemnity agreement was limited to its own device, there was no such identity of subject matter to cause the judgment to be binding on DeLuxe.

The memorandum opinion makes this further significant finding [178 F.Supp. 691, 694]:

"An adjudication between plaintiffs and The Fair and Rich Industries does not constitute a final adjudication as to other infringers *and such infringement should not be heard or decided in a contempt proceeding.*" (Emphasis added.)

Many interesting and troublesome questions have been raised by the parties in this appeal. However, we think the important and controlling issue to be decided relates to the propriety of allowing the alleged infringement to be tried in this contempt proceeding. Our resolution of that question will govern the disposition to be made of this appeal.

It is undisputed that The Fair was selling the DeLuxe hobby horses at the time of the principal action against the Rich devices. While the stipulation limiting the original infringement charge to the Rich merchandise, not having been filed in the action, was probably no more than a "gentleman's agreement," yet the issue tried was so limited. It is true that the pending New York action does not embrace all of the parties to this contempt proceeding, but it does involve the precise issue of infringement by DeLuxe alleged here. The indemnity agreement running from DeLuxe to The Fair insured the defense of this contempt action, but it is shown that The Fair had been selling DeLuxe merchandise since 1952 under the protection of prior indemnity agreements more general in character. Perhaps none of these factors in and of themselves are dispositive of this case, yet they are all matters properly to be considered in the determination of the question with which we are now concerned.

We have held that it is proper to try the question of infringement in a contempt proceeding. Kiwi Coders Corporation v. Arco Tool & Die Works, 7 Cir., 1957, 250 F.2d 562, 568; National Re-

jectors v. A. B. T. Mfg. Corp., 7 Cir., 1951, 188 F.2d 706, 710. However, it should be pointed out that in these and similar cases the parties to the contempt proceeding were the same as those in the original patent action and were expressly bound by the judgment and appropriate injunction.

No cases have been cited, and we know of none, where a third party manufacturer has been made a party to answer to a charge of infringement in a contempt action where it was not a party to the action in which the injunction was entered.

■ In contempt proceedings involving the same parties to the original action, where the accused device was not before the trial court in the first instance, it is well established that it is within the discretion of the trial court to determine whether the charge of infringement is to be determined in a contempt proceeding or in a separate action. Lewis Invisible Stitch Mach. Co. v. Popper, 2 Cir., 1941, 118 F.2d 191, 192; Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 1938, 95 F.2d 414, 426; John W. Gottschalk Mfg. Co. v. Springfield Wire & T. Co., 1 Cir., 1937, 90 F.2d 468, 472; American Foundry & Mfg. Co. v. Josam Mfg. Co., 8 Cir., 1935, 79 F.2d 116, 117; Holmes v. Atlas Garage Door Co., D.C.S.D.Cal.1945, 63 F.Supp. 692, 695; Smith, Kline & French Laboratories v. Pro-Medico Laboratories, D.C. E.D.N.Y.1944, 58 F.Supp. 234, 235; Otis Elevator Co. v. 570 Building Corporation, D.C.E.D.N.Y.1939, 26 F.Supp. 900. There is even stronger reason to follow such a rule in the situation presented here.

■ In the case before us, The Fair had been selling DeLuxe devices since 1952; DeLuxe was not a party to the original proceeding; the original action was by agreement expressly limited to Rich merchandise; it was understood in the prior action that The Fair reserved the right to defend as to any other device sold by it and manufactured by any other manufacturer and plaintiffs reserved the right to claim infringement by such articles in another suit; the precise issue of infringement of DeLuxe merchandise is pending in another action in New York, although all of the present parties are not in that action; the DeLuxe hobby horse was not before the trial court in the principal action; and the injunction in question was not specifically directed against DeLuxe. The trial court having found that "such infringement should not be heard or decided in a contempt proceeding" under the foregoing circumstances, we hold that the dismissal of the contempt petition was properly ordered and did not constitute reversible error.

■ In a proper case the circumstances may be such as to warrant a holding to the contrary. This is not such a case. *As a general rule,* however, we deem it better practice not to resort to contempt proceedings for the determination of collateral substantial questions arising subsequent to the issuance of an injunction, unless it is quite clear from the surrounding circumstances that such a course is required to preserve the integrity of the injunction.

In view of the foregoing, we do not reach the issues pertaining to the scope of the instant injunction, the legal effect of the stipulation in the principal action, questions of privity and other contentions raised in this appeal.

The judgment of the district court appealed from is

Affirmed.