# DOWAGIAC MANUFACTURING COMPANY *v.* MINNESOTA MOLINE PLOW COMPANY.

# DOWAGIAC MANUFACTURING COMPANY *v.* SMITH.

## WRITS OF CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 6, 7. Argued April 15, 16, 1913.—Decided January 11, 1915.

Where a patent is infringed by selling machines embodying improvements covered by the patent and the value of the machines as marketable articles is attributable in part to the patented improvements and in part to unpatented parts or features, the profits arising from the infringing sales belong to the owner of the patent in so far as they are attributable to the patented improvements, and in so far as they are due to the other parts or features they belong to the seller.

Upon an accounting in a suit for such infringement the commingled profits resulting from selling the machines in completed and operative form should be separated or apportioned between what was covered by the patent and what was not covered by it.

If the plaintiff's patent covered only a part of the infringing machine and created only a part of the profits, he is required to take the initiative in presenting evidence looking to an apportionment.

In an apportionment of profits mathematical exactness is not indispensable, reasonable approximation being what is required, and it usually may be attained through the testimony of experts and persons informed by observation and experience.

The result to be accomplished by an apportionment is a rational

separation of the net profits so that neither party may have what rightfully belongs to the other.

Where damages are sought for infringing sales and it does not appear that the plaintiff thereby lost the sale of a like number of machines or of any definite or even approximate number, no adequate basis is laid for an assessment of damages upon the ground of lost sales.

As the exclusive right conferred by a patent is property and infringement of it is a tortious taking of a part of that property, the normal measure of damages is the value of what was taken; and this may be shown by proof of an established royalty, if there be such, and, if not, by proof of what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved. *Coupe* v. *Royer*, 155 U. S. 565, explained.

The right conferred by a patent under our law is confined to the United States and its Territories, and infringement cannot be predicated of acts wholly done in a foreign country.

In the particular circumstances of this case the decree, although ordinarily requiring affirmance, is reversed in order that there may be an opportunity to produce further evidence upon the accounting and to take other proceedings in conformity with this court's opinion.

183 Fed. Rep. 314, reversed.

THE facts, which involve the construction and application of certain provisions of the patent laws of the United States in regard to liability for infringement, are stated in the opinion.

*Mr. Fred L. Chappell* for petitioner.

*Mr. Thomas A. Banning* for respondents.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

We have here to review two decrees dealing with an accounting of profits and an assessment of damages resulting from the infringement of a patent granted

February 10, 1891, for certain "new and useful improvements in grain-drills, commonly known as 'shoe-drills.'" The suits wherein these decrees were rendered were both brought by the same plaintiff but were against different defendants charged with separate infringement. The plaintiff, besides owning the patent, was manufacturing and selling drills embodying the patented improvements; and the defendants, who were wholesale dealers in agricultural implements, were selling drills embodying substantially the same improvements. The drills made by the plaintiff were sold under the name "Dowagiac," and the names "McSherry" and "Peoria" were applied to most of the others. The defendants purchased from manufacturers who, as has since been settled, were infringing the plaintiff's rights. At an early stage in the litigation the validity of the patent was sustained, the defendants were held to be infringers, further infringement by them was enjoined, and the cases were referred in the usual way for an accounting of profits and an assessment of damages. 108 Fed. Rep. 67; 118 Fed. Rep. 136. Upon the evidence submitted the masters reported that the recovery should be limited to nominal damages and their reports were confirmed by the Circuit Court. Its action was affirmed by the Circuit Court of Appeals. 183 Fed. Rep. 314.

The conclusion that the recovery should be thus restricted was rested upon these grounds: First, that the patent was not for a new and operative drill, but only for designated improvements in a type of drill then in use and well known; second, that the value of drills embodying this invention, as marketable machines, was not wholly attributable to the designated improvements, but was due in a material degree to other essential parts which were not patented; third, that the plaintiff failed to carry the burden, rightly resting upon it, of submitting evidence whereby the profits from the sale of the infringing drills

could be apportioned between the patented improvements and the unpatented parts; and, fourth, that, although the number of sales made by the defendants was disclosed, the evidence did not present other data essential to an assessment of the damage sustained by the plaintiff by reason of the defendants' infringement.

Partly because another Circuit Court of Appeals seemingly had reached a different conclusion in other litigation arising out of this patent (see *McSherry Co.* v. *Dowagiac Co.*, 160 Fed. Rep. 948; 163 Fed. Rep. 34; *Brennan & Co.* v. *Dowagiac Co.*, 162 Fed. Rep. 472) and partly because of the importance of the questions involved, writs of certiorari were granted requiring that these cases be certified here for review and determination. See Judicial Code, § 240.

Since the writs were granted the rules bearing upon the apportionment of profits in such cases, the relative obligations of the parties to submit evidence looking to an apportionment, and the character of evidence which may be submitted, have been extensively considered and comprehensively stated in *Westinghouse Co.* v. *Wagner Co.*, 225 U. S. 604. What was said there materially lessens our present task.

At the outset it should be observed that, while the defendants were infringers and bound to respond as such to the plaintiff, their infringement was not wanton or wilful. The masters and the courts below expressly so found and the evidence sustained the finding. The defendants, therefore, were not in the situation of the infringing manufacturer in *Brennan & Co.* v. *Dowagiac Co.*, 162 Fed. Rep. 472, of whom the Circuit Court of Appeals for the Sixth Circuit said (p. 476): "It has made and sold these infringing drills with a purpose to imitate the patentee's construction."

It is quite plain, as we think, that the patent was not for a new and operative grain-drill, but only for particular

improvements in a type of grain-drill then in use and well known. The invention was so described in the specification forming part of the patent. The inventor there said:

"This invention relates to new and useful improvements in grain-drills commonly known as 'shoe-drills;' and it consists in a certain construction and arrangement of parts, as hereinafter more fully set forth, the essential features of which being pointed out particularly in the claims.

"The object of the invention is to provide an independent spring-pressure for each of the shoes and covering-wheels of the drill, whereby the work of the drill is rendered efficient in uneven ground, and to provide means whereby said shoes and covering-wheels may be raised from the ground when the implement is not in use or when transporting it from one field to another."

In keeping with this statement the claims in the patent were limited to a suitable construction and arrangement of spring-pressure rods in combination with certain correlated elements of the seeding part of a grain-drill—the part which opens the furrows, guides the seed into them and then closes them. Of course, this was an important part, but it was only that; for other parts were required to complete the machine and make it operative. Some of these were simple and easily supplied, such as the tongue and attachments to which the horses were hitched. Others were complex and required careful adjustment. This was especially true of the feeding mechanism whereby the grain was fed from the feed box or reservoir into the several hoppers in continuous, uniform and precisely measured streams, so that it might be deposited in the furrows evenly and in suitable quantity. Only when all the parts were present and so adjusted as to perform their respective functions was the drill a practical and successful machine. In this respect no change resulted from the invention covered by the patent. It effected material

improvements in one part, but did not obviate or diminish the necessity for the others.

We think the evidence, although showing that the invention was meritorious and materially contributed to the value of the infringing drills as marketable machines, made it clear that their value was not entirely attributable to the invention, but was due in a substantial degree to the unpatented parts or features. The masters and the courts below so found and we should hesitate to disturb their concurring conclusions upon this question of fact, even had the evidence been less clear than it was.

In so far as the profits from the infringing sales were attributable to the patented improvements they belonged to the plaintiff, and in so far as they were due to other parts or features they belonged to the defendants. But as the drills were sold in completed and operative form the profits resulting from the several parts were necessarily commingled. It was essential therefore that they be separated or apportioned between what was covered by the patent and what was not covered by it, for, as was said in *Westinghouse Co.* v. *Wagner Co.*, *supra* (225 U. S. 615): "In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains." In the nature of things the profits pertaining to the patented improvements had to be ascertained before they could be recovered by the plaintiff, and therefore it was required to take the initiative in presenting evidence looking to an apportionment. Referring to a like situation, it was said in the case just cited (p. 617): "The burden of apportionment was then logically on the plaintiff, since it was only entitled to recover such part of the commingled profits as was attributable to the use of its invention." But the plaintiff did not conform to this rule. It neither submitted evidence calculated to effect an apportionment nor attempted to show that one was impossible; and this, although the

evidence upon the accounting went far towards showing that there was no real obstacle to a fair apportionment. Certainly no obstacle was interposed by the defendants. It well may be that mathematical exactness was not possible, but, as is shown in *Westinghouse Co.* v. *Wagner Co., supra* (pp. 617, 620, 621, 622), that degree of accuracy is not required but only reasonable approximation, which usually may be attained through the testimony of experts and persons informed by observation and experience. Testimony of this character is generally helpful and at times indispensable in the solution of such problems. Of course, the result to be accomplished is a rational separation of the net profits so that neither party may have what rightfully belongs to the other, and it is important that the accounting be so conducted as to secure this result, if it be reasonably possible. As was said in *Tilghman* v. *Proctor*, 125 U. S. 136, 145, "it is inconsistent with the ordinary principles and practice of courts of chancery, either, on the one hand, to permit the wrongdoer to profit by his own wrong, or, on the other hand, to make no allowance for the cost and expense of conducting his business, or to undertake to punish him by obliging him to pay more than a fair compensation to the person wronged."

Coming to the question of damages,[1] we think the masters and the courts below were right in holding that the evidence did not present sufficient data to justify an assessment of substantial damages.

---

[1] Rev. Stat., § 4921, provides that "upon a decree being rendered in any such case for an infringement, the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby; and the court shall assess the same or cause the same to be assessed under its direction. And the court shall have the same power to increase such damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case." See *Birdsall* v. *Coolidge*, 93 U. S. 64, 69; *Tilghman* v. *Proctor*, 125 U. S. 136, 148.

While the number of drills sold by the defendants was shown, there was no proof that the plaintiff thereby lost the sale of a like number of drills or of any definite or even approximate number. During the period of infringement several other manufacturers were selling drills in large numbers in the same localities in direct competition with the plaintiff's drill, and under the evidence it could not be said that, if the sales in question had not been made, the defendants' customers would have bought from the plaintiff rather than from the other manufacturers. Besides, it did not satisfactorily appear that the plaintiff possessed the means and facilities requisite for supplying the demands of its own customers and of those who purchased the infringing drills. There was therefore no adequate basis for an assessment of damages upon the ground of lost sales.

As the exclusive right conferred by the patent was property and the infringement was a tortious taking of a part of that property, the normal measure of damages was the value of what was taken. So, had the plaintiff pursued a course of granting licenses to others to deal in articles embodying the invention, the established royalty could have been proved as indicative of the value of what was taken, and therefore as affording a basis for measuring the damages. *Philp* v. *Nock,* 17 Wall. 460, 462; *Birdsall* v. *Coolidge,* 93 U. S. 64, 70; *Clark* v. *Wooster,* 119 U. S. 322, 326; *Tilghman* v. *Proctor,* 125 U. S. 136, 143. But, as the patent had been kept a close monopoly, there was no established royalty. In that situation it was permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved. Not improbably such proof was more difficult to produce, but it was quite as admissible as that of an established royalty. In *Suffolk Co.* v. *Hayden,* 3 Wall. 315, 320, where a like situation was presented, this court

said that "in order to get at a fair measure of damages, or even an approximation of it, general evidence must necessarily be resorted to." See also *Packet Co.* v. *Sickles,* 19 Wall. 611, 617; *Root* v. *Railway Co.,* 105 U. S. 189, 198. And in many cases in the other Federal courts the damages have been assessed upon proof of a reasonable royalty. The practice is illustrated by the following extract from the opinion in *Hunt* v. *Cassiday,* 12 C. C. A. 316, 318, 64 Fed. Rep. 585, 587: "The plaintiff was clearly entitled to damages for the infringement. If there had been an established royalty, the jury could have taken that sum as the measure of damages. In the absence of such royalty, and in the absence of proof of lost sales or injury by competition, the only measure of damages was such sum as, under all the circumstances, would have been a reasonable royalty for the defendant to have paid. This amount it was the province of the jury to determine. In so doing, they did not make a contract for the parties, but found a measure of damages." True, some courts have regarded *Coupe* v. *Royer,* 155 U. S. 565, as impliedly holding that this practice was not permissible, but the decision does not admit of such an interpretation. In that case—an action at law—there was no proof of what would have been a reasonable royalty but only of what the defendant had made or might have made out of the infringement; and all that the court held was (a) that the damages were not to be measured by what the defendant had gained or might have gained but by what the plaintiff had lost, and (b) that, as the evidence disclosed (p. 583) "no license fee, no impairment of the plaintiff's market, in short, no damages of any kind," the verdict could not exceed a nominal sum. In *Cassidy* v. *Hunt,* 75 Fed. Rep. 1012, where the scope of that decision was carefully considered by one of the Circuit Judges for the Ninth Circuit, the conclusion was reached that it did not militate against an assessment of damages upon the basis of what would have been

a reasonable royalty; and a like view was expressed and applied by the Circuit Court of Appeals for the Third Circuit in *McCune* v. *Baltimore & O. R. R.*, 154 Fed. Rep. 63, and *Bemis Car Co.* v. *Brill Co.*, 200 Fed. Rep. 749, 762, and by the Circuit Court of Appeals for the Sixth Circuit in *United States Frumentum Co.* v. *Lauhoff*, 216 Fed. Rep. 610. But, although the plaintiff was entitled to prove what would have been a reasonable royalty, and thereby to show a proper basis for an assessment of damages, no proof upon that subject was presented.

There are still other grounds upon which damages may be assessed in infringement cases, as where hurtful competition is shown, but the present record does not require that they be specially noticed.

Some of the drills, about 261, sold by the defendants were sold in Canada, no part of the transaction occurring within the United States, and as to them there could be no recovery of either profits or damages. The right conferred by a patent under our law is confined to the United States and its Territories (Rev. Stat., § 4884) and infringement of this right cannot be predicated of acts wholly done in a foreign country. See *United Dictionary Co.* v. *Merriam Co.*, 208 U. S. 260, 265. The case of *Manufacturing Co.* v. *Cowing*, 105 U. S. 253, is cited as holding otherwise but is not in point. There the defendant made the infringing articles in the United States. Here, while they were made in the United States, they were not made by the defendants. The latter's infringement consisted only in selling the drills after they passed out of the makers' hands. The place of sale is therefore of controlling importance here.

Ordinarily what has been said would lead to an affirmance of the decrees below. But there are special reasons why a final disposition of the cases should not be made upon the present record at this time. The patent was valid and the invention meritorious. The infringing sales

covered 2500 or more drills, the profits were substantial, and the damages, if rightly measured, were evidently more than nominal. The hearings before the masters were had prior to the decision in *Westinghouse Co.* v. *Wagner Co., supra,* at a time when the decisions bearing upon the apportionment of profits, as also upon the admeasurement of damages, were not harmonious; and this resulted in the evidence being so imperfectly presented as not to afford the data requisite to a final adjustment of the matters in controversy according to their merits.

The decrees are accordingly reversed, without costs, with directions to recommit the cases to a master in order that the questions involved in the original reference may be heard anew upon the evidence heretofore taken and such further evidence as may be submitted, and for further proceedings in conformity with this opinion.

*Decrees reversed.*

Mr. Justice McReynolds did not participate in the consideration or decision of these cases.