**SMITH v. THURRELL et al.**

No. 268.

District Court, D. New Hampshire.
March 13, 1936.

Robert Upton and Lawrence Duncan, both of Concord, N. H., for complainant.

McLane, Davis & Carleton, of Manchester, N. H., for defendants.

MORRIS, District Judge.

This is an action alleging infringement of claim 1 of patent No. 1,262,860, a method patent for hatching eggs issued to the plaintiff, Samuel B. Smith, April 16, 1918.

The validity of the patent has been extensively litigated and upheld by various district and circuit courts and by the United States Supreme Court in the case of Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721.

Claim 1 has been so frequently described and interpreted by the courts that it seems unnecessary to further elaborate upon the same, especially in view of the fact that the defendants do not seriously contest its validity or that the incubators known as the Robbins incubators that the defendant corporation was using are not an infringement on the Smith patent. Such a contention would avail the defendant nothing, in view of the fact that the courts have already held that the Robbins incubators as used are an infringement of the Smith patent. It was so held in the case of Waxham v. Smith (C.C.A.) 70 F.(2d) 457, affirmed by the Supreme Court in Waxham v. Smith, 294 U.S. 20, 21, 55 S.Ct. 277, 281, 79 L.Ed. 733.

Briefly, the Smith patent relates to a method of hatching eggs, and, as stated by Mr. Justice Stone in Smith v. Snow, supra, "Smith conceived the idea, embodied in his patent, of setting the eggs in staged incubation within the cabinet and applying to them, in convenient arrangement for that purpose, a current of heated air, propelled by means other than convection. Staged incubation is the successive setting of eggs in the same cabinet at brief intervals, of about three days. At the twenty-first day there would thus be several settings of eggs in the incubator, each at a different stage of incubation, part in the endothermic stage and part in the exothermic. Smith arranged the egg trays or racks in tiers, so that air could be freely circulated among the eggs. He subjected them to a continuous current of air of the requisite constant temperature of about 100° F., propelled by a fan so that it would circulate freely and repeatedly throughout the cabinet. The heat of the eggs in the later stages of incubation was thus carried by the circulating air of lower temperature to the cooler eggs, in the earlier stages, so that there was a continuous tendency to equalize the temperature throughout the cabinet at approximately the temperature of the introduced current of air."

The defendant Cotton Mountain Farms, Inc., purchased two Robbins incubators No. 17 in the fall of 1929, having an advertised capacity of 17,900 eggs each. They were delivered on the premises of the defendant in December of that year, and have been in use by the Cotton Mountain Farms, Inc., ever since. The purchase price was approximately $3,700 for the two machines.

I find that the Robbins incubators purchased by the defendant corporation as used by it infringed the Smith patent.

R. F. Thurrell, named as a defendant in this action, is treasurer and general manager of Cotton Mountain Farms, Inc., I find as a fact that as an individual he has never purchased or used a Robbins incubator, and that he is entitled to a decree in his favor, with costs.

The Smith patent expired April 16, 1935, so there seems to be no occasion for

938

the issuing of an injunction. The main issue in the case is a question of damages.

The plaintiff invokes the principle that, where an infringement consists of the use of a patented process, device, or machine, as distinguished from a sale, or manufacture and sale, of a patented article, and there is a proper standard of comparison, the profits for which the infringer is liable may be measured by the saving or advantage which he has derived from the use of the infringing article over what he would have had in using another means then open to the public and adequate to obtain an equally beneficial result, and he may be held liable for such saving or advantage, even though from other causes his general business in which the infringing article was employed has not been profitable. Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664.

The plaintiff seeks a comparison between the use of the infringing Robbins machines with the Petersime incubator as being the incubator the nearest for comparison of any noninfringing incubator in use at the time the Robbins machines were purchased. Buckeye Incubator Co. v. Petersime (C.C.A.) 19 F.(2d) 721.

The defendants do not seriously contend that such comparison should not be made, but they do contend that it was not necessary that they should purchase three Petersime incubators with an egg capacity of 36,031 at a cost of $4,403. They further contend that they are not chargeable with any damage or profit until they were notified that they were using infringing machines. Two notices were sent to the defendant corporation notifying it that the Robbins incubators which it was using was an infringement on letters Patent No. 1,262,860, issued to Samuel B. Smith. The first notice was given August 10, 1932. The second notice was given April 10, 1934. Both were sent by registered mail, and return receipts were introduced as exhibits in the case.

I find that the Cotton Mountain Farms, Inc., has never had occasion to use the Robbins incubators at their full capacity, and that an incubator or incubators having a capacity of 27,000 eggs would have been sufficient for its past use, and, so far as appears, would be sufficient for its further needs.

The plaintiff, starting with an investment in two No. 17 Robbins incubators, including freight, of $3,341.70 and an investment in three Petersime incubators, including freight, of $4,403, claims a saving in investment by reason of the purchase of the Robbins incubator of $1,061.-30. By a rather intricate system of computation, figuring depression at 10 per cent. interest on additional investment at 6 per cent., taxes on three-fourths of the value of the extra investment computed at the annual rates in the town of Wolfboro and insurance reach a total savings to the corporation of $972.18. Plaintiff claims that this amount was saved by reason of purchasing the Robbins incubators instead of the Petersime incubators.

I do not find any fault with the comparison or the method of computation, but, as hereinbefore stated, I find that it would not have been necessary for the corporation to have purchased three Petersime incubators in order to supply its requirements, and, if only two had been purchased according to the same method of computation, the saving would have been nominal.

If, as testified, the cost of the two Robbins incubators was approximately $3,700, the corporation lost on them.

Incubators under the Smith patent are manufactured by the Smith Incubator Company, but from the evidence it appears that that company manufactures only the larger sizes, and that under a license agreement the smaller sizes of 16,500 egg capacity or less are manufactured by the Buckeye Incubator Company. There is nothing to indicate that this company could not supply the market with Smith incubators of 16,500 egg capacity which would have been sufficient for the defendant's requirements.

Under the license agreement, Samuel B. Smith, the patentee, was entitled to receive from the Buckeye Incubator Company a royalty of $150 on every machine manufactured and sold of 16,500 egg capacity.

I find that this is what the plaintiff lost by reason of the purchase by the defendant corporation and use of the two infringing Robbins incubators. See Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 35 S.Ct. 221, 59 L.Ed. 398.

I therefore assess the plaintiff's damages at $300, with interest from December 16, 1929, to April 16, 1935, at the rate of 6 per cent.

While the defendants claim that no damages could be assessed prior to the date of the first notice of the infringement, I understand the rule applicable to this case requires the assessment of damages with interest from the date of purchase of the infringing incubators. See Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., 56 S.Ct. 528, 80 L.Ed. ——, decided March 2, 1936.

A decree may be presented in accordance with this rescript.