**KALTENBACH et al. v. CHESAPEAKE & OHIO RY. CO.**

No. 308.

District Court, E. D. Virginia.

May 20, 1941.

See also 95 F.2d 801.

Frank A. Kearney, of Phoebus, Va., and Albert R. Teare, of Cleveland, Ohio, for plaintiffs.

Leigh D. Williams, of Norfolk, Va., and Corbett & Mahoney, of Columbus, Ohio, for defendant.

WAY, District Judge.

Memorandum of the Court's conclusions on the exceptions of plaintiff and defendant, respectively, to the report of the Special Master filed herein October 4, 1940:

█ (1) The action of the Master in determining what was a reasonable royalty for the use of plaintiff's devices and accepting that as the basis for ascertaining the damages for the infringement, was proper under the facts of the case. The question presented was not whether the defendant during the infringement period made a profit or sustained a loss in operating its coal dumper as an entirety; or how much profit, if any, the plaintiff would probably have made if the contract to construct the coal dumper had been awarded to it by defendant, but whether or not defendant received material benefit and advantage from having the two devices incorporated in the coal dumper and used as a part thereof during the infringement period. If the incorporation and use of these devices during that period was of material benefit and advantage to defendant, then the plaintiff is entitled to recover damages for infringement. On the other hand, if the presence and use of these devices in the coal dumper constituted no advantage or was a disadvantage, plaintiff would not have been entitled to recover any damages even if the defend-

ant had made large profits in operating its coal dumper as a whole during the infringement period. The evidence taken before the Master and the record in the cause amply support the finding that the two devices were beneficial in defendant's coal dumper operations at the pier in question.

A study of the record, the report and the briefs convince the Court that the method employed by the Master in ascertaining plaintiff's damages is decidedly more accurate and satisfactory than any other method suggested by either party. It reasonably satisfies the degree of accuracy that is required in such cases, Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U.S. 641, at page 647, 35 S.Ct. 221, 59 L.Ed. 398, and there is ample evidence to sustain the finding that one-half a cent a ton for "easy coal" is neither excessive nor manifestly insufficient. That royalty appears to be approximately correct.

■ (2) The Master found that infringement ceased on July 6, 1937. That finding is based on the testimony considered in the light of a visit by the Master to the coal dumper and an inspection of the two devices incorporated therein. No sufficient reason appears that will justify the Court in disturbing that finding.

■ (3) The conclusion that interest on the damages allowed should run from the time of the filing of the Master's report, October 4, 1940, is based upon the opinion of the Supreme Court in Duplate Corp. et al. v. Triplex Safety Glass Co., 298 U.S. 448, 459, 56 S.Ct. 792, 797, 80 L.Ed. 1274, in which it is said: "If, however, an award of damages upon the basis of a reasonable royalty becomes appropriate again, we think that interest should run from the date when the damages are liquidated, and not, as by the present decree, from the date of the last infringement. Crosby Valve Co. v. Consolidated Safety Valve Co., supra, 141 U.S. 441, at pages 457, 458, 12 S.Ct. 49, 35 L.Ed. 809; Tilghman v. Proctor, 125 U.S. 136, 160, 161, 8 S.Ct. 894, 31 L.Ed. 664; Mowry v. Whitney, 14 Wall. 620, 653, 20 L.Ed. 860. There are no exceptional circumstances justifying a departure from what is at least the general rule."

In that case the Court found that the infringer acted in good faith. Plaintiff earnestly urges in the instant case the infringers acted in bad faith and that there are "exceptional circumstances justifying a departure" from the general rule. There is merit in this contention, but, as pointed out in the report, there have been a number of decisions since the Duplate Corp. et al. v. Triplex Safety Glass Co., supra, holding even in cases where the infringement was willful and deliberate, that interest is to be allowed on the damages only from the time they are liquidated.

In view of these decisions interest will be allowed upon the amount found by the Master from October 4, 1940. The rate recommended in the report is 5%. However, in Virginia, the legal rate which judgments and decrees carry, in the absence of controlling provisions in a statute or contract, is 6% and the decree should follow the Virginia rule.

■ (4) Among other things, the plaintiff has excepted to the report on the ground that it denies plaintiff the right to recover as a part of its costs certain litigation expenses in the amount of $13,242.72. As the Court views the matter the Master correctly followed the rule announced by our Circuit Court of Appeals in Sutton et al. v. Gulf Smokeless Coal Co. et al., 4 Cir., 77 F.2d 439, 442. There it was held that "there is no authority for the allowance of litigation expenses other than the ordinary costs of action".

■ (5) The master found that plaintiff is entitled to damages by way of reasonable royalty in the sum of $34,203.41, and recommended that the damages so found be trebled. Defendant objects to the adoption of this recommendation upon two grounds, namely, (a) that the decree of reference did not confer upon the Master authority to make any recommendation with respect to increasing the damages; and (b) the facts in the case do not justify a recovery of anything more than the actual damages found by the Court to have been sustained by plaintiff with interest thereon from the proper date until paid and recoverable costs. Plaintiff urges that in this case the evidence shows defendant and Industrial Brownhoist Corporation, the contractor which built the dumper, were guilty of a serious breach of confidence and that their action in appropriating plaintiff's inventions was deliberate and willful. The facts in the case, as heretofore found by this Court,

support the plaintiff's contention. A summary of the circumstances under which defendant and Industrial Brownhoist Corporation appropriated plaintiff's inventions is stated in the opinion of the Court filed May 27, 1937, as follows:

"As already set forth more in detail the proposal submitted by Kaltenbach on May 26, 1930, embodied the novel features covered by the two patents, but none of the proposals submitted by Brownhoist prior to the Railway's letter of July 2, 1930, advising Kaltenbach that the work had been let elsewhere, embodied or referred to either of those novel features. The Brownhoist proposals prior to the blueprints of September 3, 1930, were based on the Port Richmond design of the Philadelphia and Reading Railway. The evidence fails to show and in fact there is no plausible suggestion, that Mr. Kaltenbach ever made these inventions known to anyone other than the Railway before he filed his applications for patents on September 13, 1930, and January 2, 1931, respectively. Mr. Taylor, Vice-President of Brownhoist, in the interference filed by him in the patent office, claimed that he conceived the idea of the extensible chute or member about September 3, 1930. However, his hasty retreat from that controversy and the testimony and exhibits before the court make it clear beyond serious doubt that he never invented the device illustrated by his blueprints of September 3rd and October 29, 1930. That these two devices were new to both the Railway and Brownhoist experts and representatives before they were disclosed by the Kaltenbach proposal of May 26, 1930, is clear. In that situation, the evidence leaves the Railway as the only probable source from which Brownhoist could have secured the Kaltenbach inventions in order to embody them in the dumper. When this circumstance is considered along with the unexplained delay from about July 2, 1930, to December 26, 1930, in signing the contract between Brownhoist and the Railway during which time equivalents of the Kaltenbach devices were substituted for those originally specified by the Railway and proposed by Brownhoist, the refusal of the Railway to comply with Kaltenbach's demands for the return of that Company's plans and specifications submitted with its proposal after Kaltenbach had been advised to the effect that the work had been let elsewhere, the circumstances of a blueprint with the legend cut off being in possession of Brownhoist as related by two witnesses, the disappearance of a blueprint left by Mr. Kaltenbach with the Railway about June 9, 1930, and the information shown by Exhibit 50 from the Railway's files with respect to the contents of that blueprint, the court cannot easily avoid the conclusion that an understanding, express or implied, was entered into apparently between some subordinate representative of the Railway and Brownhoist representatives for Brownhoist, wrongfully to appropriate the Kaltenbach inventions and to embody them in the Railway's coal dumper and that substantial equivalents of these devices were actually embodied in the dumper by Brownhoist pursuant to such understanding."

The record discloses that as early as July 1930 the defendant was advised of these improvements and knew that it had no right to use them except with the plaintiff's permission. (Printed Record 322–325 and exhibits there referred to). Divulging to the Industrial Brownhoist Corporation the inventions disclosed by plaintiff's plans and specifications submitted with its bid of May 26, 1930, was a serious breach of confidence on the part of defendant. The evidence shows beyond reasonable doubt that the action of the Industrial Brownhoist Corporation in appropriating and using the plaintiff's inventions was willful, deliberate and in total disregard of plaintiff's rights. Except for the aid and assistance of someone in the employ of the defendant, the Industrial Brownhoist Corporation could not have obtained the knowledge of the inventions in time to incorporate the devices in the dumper.

It is true, as pointed out in the brief of defendant and as found by the Court, that these inventions were originally divulged to Industrial Brownhoist Corporation apparently by a subordinate employee or representative of defendant. When the matter of the wrongful appropriation of plaintiff's inventions was first brought to the attention of higher officials, if defendant had promptly repudiated the action of the subordinate representative or employee there would be no substantial ground for holding that defendant was guilty of willful and deliberate participation in the appropriation of plaintiff's inventions. The defendant has not repudiated that action, but on the contrary ratified and defended it by extended and

expensive litigation and long use of the two devices, so that what originally may have lacked corporate authorization was subsequently deliberately ratified with full knowledge of all the material facts. Defendant's representatives knew as early as July 1930 that they had no right to submit plaintiff's drawings to outside sources (Rec. 322, 323) yet in the face of that knowledge they willfully violated the plaintiff's confidence. The Court is of the opinion under all the circumstances that the damages should be materially increased, as allowed by the statute. U.S. C.A., Title 35, §§ 67 and 70. But treble damages appear to be excessive. Considering all the circumstances of the case the Court is of the opinion and so finds that the damages should be increased by one hundred and twenty-five percent, or to a total of $76,957.67.